**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRIEDRICH LU,** | : | |
| Plaintiff, | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 23-1239** |
| | : | |
| **JANE E. YOUNG,** *et al.*, | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM

Younge, J.                                                                                      August 10, 2023

## I.      INTRODUCTION

Currently before this Court are three Motions to Dismiss filed by:

1. Defendants Comcast Cable Communications ("Comcast"), LLC, Lynn R. Charytan, Alycia Horn, Tucker Law Group, LLC, Joe H. Tucker, Jr., and Leslie Miller Greenspan (collectively, the "Comcast Defendants") (ECF No. 32);

2. The United States and Defendants Mark L. Wolf, Senior U.S. District Judge in the District of Massachusetts; George V. Wylesol, Clerk of the U.S. District Court for the Eastern District of Pennsylvania; Catherine O'Hagan Wolfe, Clerk of the U.S. Court of Appeals for the Second Circuit; and Jane E. Young, United States Attorney for the District of New Hampshire (collectively, the "Federal Defendants") (ECF No. 36); and

3. Defendants Boston Public Health Commission ("BPHC"), Bisola Ojikutu, Timothy Harrington, Whitney C. Pasternack, and Batool Raza (collectively, the "BPHC Defendants") (ECF No. 44).

The Court finds these motions appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f).  Additionally, for the reasons set forth in this Memorandum, the Comcast Defendants, Federal Defendants, and BPHC Defendants' Motions to Dismiss (ECF Nos. 32, 36, 44) will be granted with prejudice, without leave to amend.  Additionally, Defendants Walter T. Mitchell and Jahad Hasan (Boston Police Department Detectives), Eric T. Donovan (Clerk

Magistrate), Judge David T. Donnelly (Boston Municipal Court), Steven Tankle (Boston City Official), and Jeffrey A. Locke (Chief Justice of the Trial Court) (collectively, the "Remaining Defendants") will be dismissed without prejudice for lack of proper or timely service.

## II.    FACTUAL BACKGROUND & PROCEDURAL HISTORY

On March 29, 2023, Plaintiff Friedrich Lu filed this civil action *pro se* against 22 Defendants, including the United States and several of its employees, Comcast and several of its attorneys, the Boston Public Health Commission and several of its employees, and members of the Boston Police Department and judges serving in courts in Boston. (Compl., ECF No. 1.)  Although the factual matter contained in Plaintiff's Complaint is unclear at best, Plaintiff suggests that each of the named Defendants played a role in a conspiracy to harass and spy on him.  (Compl., ECF No. 1.)

Plaintiff sees himself as the unfortunate main character of a spy story.  (Compl., ¶¶ 3(a)-4(a)), ECF No. 1.)  He believes the story began in February of 1996 after he allegedly probed the United States Department of Justice to investigate judicial corruption in Massachusetts.  (*Id.* at ¶ 5(a).)  Since then, Plaintiff has been a frequent litigator and has filed numerous frivolous lawsuits against public and private parties in the District of Massachusetts alone, where he is now enjoined from filing without first certifying that his claims are made in good faith.  *See Lu v. Harvard Sch. Of Dental Med.*, No. 1:00-cv-11492, 2002 U.S. Dist. LEXIS 30683 (D. Mass. Mar. 29, 2002); *Lu v. Budd*, 546 F. Supp. 3d 9 (D. Mass. 2021); *Lu v. Capitol Waste Servs., Inc.*, No. 19-11458-FDS, 2019 WL 8756875 (D. Mass Sep. 19, 2019); *Lu v. Niles*, No. 16-12220-FDS, 2017 WL 3027251 (D. Mass. Jul. 17, 2017).

With respect to the Comcast Defendants, Plaintiff claims that the Comcast Defendants conspired with the United States Government to engage in wire fraud and obstruction of justice,

making them liable for civil damages under the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act. (Compl., ¶¶ 9(b), 15, ECF No. 1); *see also* 18 U.S.C. §§ 1964(c), 1962(d), 1343, 1503. He bases these claims on two primary allegations. First, Plaintiff alleges that in responding to parallel litigation that he initiated against the Comcast Defendants in this Court, Defendant Leslie Miller Greenspan, in cooperation with the other Comcast Defendants, filed a "ghost-written" motion to dismiss. (Compl., ¶ 9(b)(i), ECF No. 1); *see also Lu v. Comcast Cable Commc'ns*, No. 2:22-cv-03633-RBS (E.D. Pa. Sept. 2, 2022). Second, Plaintiff alleges that the Comcast Defendants attempted to corruptly influence the Honorable Judge R. Barclay Surrick, who currently presides over Plaintiff's parallel litigation. (Compl., ¶ 9(b)(i), ECF No. 1.) Plaintiff demands a jury trial, punitive damages, injunctive relief, declaratory judgment, and court costs. (Compl., ¶ 19, ECF No. 1.)

With respect to the United States, Plaintiff alleges a violation of the Federal Tort Claims Act ("FTCA"). (Compl., ¶ 13 ECF No. 1.) The documents that he attaches to his Complaint allege that his personal property (in the form of his "lawsuits") was injured on August 10, 2022 when "somebody conducted a warrantless search and seizure of content in [his] Gmail account[.]" (Compl., Ex. A, at p. 2, ¶ 2(a), ECF No. 1-1); *see also* (Compl., ¶ 8(a)-(b), ECF No. 1.) He sues the United States in tort for this conduct because "[t]he sophistication of the hacking is of such a class that only a nation may pull it off." (Compl., p. 2, ¶ 2(a), ECF 1-1.) More specifically, Plaintiff claims that unnamed individuals he encountered at his local library in Boston were federal employees who conspired to hack his account. (Compl., p. 3, ¶ 2(c), ECF No. 1-1.) Those individuals, he suspects, also: (1) conspired to prevent him from being served with documents in his lawsuits; and (2) coordinated with adverse parties in those suits to tamper with his claims. (Compl., p. 3, ¶ 3(b), ECF No. 1-1.) He believes that the U.S. Department of Justice, including the

Boston based U.S. Attorney's Office and FBI agents, "are aware of who in the government and/or out[side of government] caused or causes harm." (Compl., ¶ 7, ECF No. 1.)

With respect to the Federal Defendants, Plaintiff also sues Defendant Catherine O'Hagan Wolfe (Second Circuit Clerk of Court) and George V. Wylesol (Clerk for the U.S. District Court for the Eastern District of Pennsylvania) in their official capacities but does not offer a legal theory. (Compl., ¶¶ 14(b), ECF No. 1.) Plaintiff claims Clerk O'Hagan Wolfe failed to timely docket his amicus motion in *Carroll v. Trump*. (Compl., ¶14(b)(i), ECF No. 1.)  Plaintiff claims Clerk Wylesol returned an initial filing fee check that Lu had attempted to submit in this case. (Compl., ¶ 14(b)(ii), ECF No. 1.) The docket reflects acceptance of a $402 filing fee on March 29, 2023. (ECF No. 4.)  Additionally, Plaintiff alleges a RICO conspiracy theory, suing the United States, Jane E. Young (U.S. Attorney for the District of New Hampshire) in her official capacity, and Mark L. Wolf (Senior Judge for the District of Massachusetts) in his personal capacity as "RICO persons[.]" (Compl., ¶¶ 14(a)-b, ECF No. 1.) He claims the U.S. Department of Justice, is a puppet master that pulled the strings on the apparent hacking of his email account. (Compl., ¶¶ 7-9, ECF No. 1.) He believes the United States and Judge Wolf conspired to assign judges to his cases that were detrimental to his interests and convinced said judges to enforce Judge Wolf's 2002 injunction against him. (Compl., ¶¶ 9, 10(d)(ii), ECF No. 1.)  He also claims Defendant Young "removed herself from all things related to . . . Lu[.]" (Compl., ¶ 2(a), ECF No. 1.)  Plaintiff demands a jury trial, punitive damages, injunctive relief, declaratory judgment, and court costs. (Compl., ¶ 19, ECF No. 1.)

Finally, with respect to the BPHC Defendants, Plaintiff alleges that they colluded with federal judges in the District of Massachusetts in connection with cases currently pending before them where Plaintiff is or was a party. (Compl., ¶ 16(a), ECF No. 1.)  As a homeless shelter,

4

Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that his Fourteenth Amendment Due Process Rights were violated when the BPHC Defendants removed eight beds from the shelter (ultimately denying Plaintiff his preferred accommodations) and when they implemented a "mask mandate." (Compl., ¶¶ 16(c)-(d), ECF No. 1.)  He also claims that the BPHC Defendants' actions were "arbitrary and capricious under Massachusetts common law." (Compl., ¶ 16(e), ECF No. 1.)

### III.   LEGAL STANDARD

#### A.   12(b)(1): Lack of Subject Matter Jurisdiction

A Motion to dismiss pursuant to Rule 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction.  When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.  *Kehr Package, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.*, 387 F. App'x 289, 292 (3d Cir. 2010) (citing *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993)).  In reviewing a motion brought pursuant to rule 12(b)(1), the Court should determine whether the motion presents a facial or factual challenge.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).  A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction."  *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999).  A court considering a facial challenge construes the allegations in the complaint as true and determines whether subject matter jurisdiction exists.  *Mortensen*, 549 F.2d at 891; *see also Cardio-Med. Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983).  A

factual attack under Rule 12(b)(1) challenges the very power of a district court to hear a case, independent of the pleadings. *Mortensen*, 549 F.2d at 891.

When evaluating a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* Unlike a facial attack, no presumption of truth attaches to the plaintiff's allegations in a factual challenge and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Furthermore, in a factual challenge, the plaintiff bears the burden of establishing that jurisdiction exists. *Id.* The district court is not required to convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment merely because the court considers evidence outside the complaint. *Medica v. City of Philadelphia*, 219 F. App'x 169, 172 (3d Cir 2007).

Federal Rule of Civil Procedure 12(h)(3) states, "if the court determines at any time that it lacks subject matter jurisdiction, the Court must dismiss the action." A federal district court is a court of limited jurisdiction and has an independent obligation to inquire into whether it has subject matter jurisdiction to preside over a case. *See Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 77 (3d Cir. 2003). Federal courts have an ever-present obligation to ensure that subject matter jurisdiction exists, and they can raise issues of subject matter jurisdiction *sua sponte* at any time. Fed. R. Civ. P. 12(h)(3); *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte*."); *Johnson v. United States*, No. 08-0816, 2009 U.S. Dist. LEXIS 76545, at *6 (M.D. Pa. Aug. 27, 2009). A district court should dismiss a complaint if it lacks subject matter jurisdiction over the claims because without subject matter

jurisdiction the court does not have the power to hear the case.  Fed. R. Civ. P. 12(b)(1); *Mortensen v. First Fed. Sav and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.   12(b)(6) Failure to State a Claim

The standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is examined in detail in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face.'" *Tatis v. Allied Interstate*, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Thus, this Court must examine Plaintiff's claims to determine whether it can infer that Defendants are liable for the alleged misconduct.

## IV.   DISCUSSION

Given the various defendants and claims in this case, this Court will briefly analyze why dismissal of the Comcast Defendants, Federal Defendants, BPHC Defendants, and the Remaining Defendants is warranted.

### A.   Dismissal of the Comcast Defendants

As previously noted, Plaintiff has asserted a RICO claim against the Comcast Defendants. RICO was passed by Congress as a response to organized crime, although its application is not so

limited.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 248 (1989).  Private individuals that have been injured in their business or property by reason of a violation of section 1962 may recover treble damages, cost of the suit, and a reasonable attorney's fee. 18 U.S.C. § 1964(c).  A violation of section 1962 requires a showing that the defendants either engaged in or conspired to engage in a "pattern of racketeering activity," which is defined in Section 1961 as at least two acts from a list of prohibited predicate acts, including wire fraud and obstruction of justice. 18 U.S.C. §§ 1962, 1961, 1343, 1503.  A plaintiff asserting a conspiracy theory under section 1962(d) must prove that the defendant adopted the goal of furthering or facilitating the prohibited conduct under section 1962 by addressing "the period of conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Smith v. Berg*, 247 F.3d 532, 537-39 (3d Cir. 2001); *Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated by Beck v. Prupis*, 529 U.S. 494, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000).  A plaintiff alleging racketeering activities rooted in fraud, including wire fraud, must meet a heightened pleading standard. Fed. R. Civ. P. Procedure 9(b) ("[i]n alleging fraud . . . a party must state *with particularity* the circumstances constituting [said] fraud.") (emphasis added).

Plaintiff's conspiracy to commit wire fraud claim against the Comcast Defendants fails to contain any such degree of particularity. *See* (Compl. ¶¶ 9(b), 15, ECF No. 1) (claiming in conclusory fashion that "RICO persons are [Comcast Defendants]" because they filed a "ghost-written" motion to dismiss and "endeavor[ed] to corruptly influence [J]udge R. Barclay Surrick."). Indeed, Plaintiff's allegations fail to mention a single detail regarding "the period of conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin*, 885 F.2d at 1166 (3d Cir. 1989).  Plaintiff's allegations are equally insufficient when applied to a theory of conspiracy to obstruct justice.  This Court is unable to

8

draw anything close to a reasonable inference that Defendants are liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

Additionally, to have standing to bring a RICO claim, a plaintiff must show "(1) that [he] suffered an injury to business or property; and (2) that [his] injury was proximately caused by the defendant's violation of [section 1962]." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000). The injury requires proof of "concrete financial loss" such as out-of-pocket expenses and not "mere injury to invaluable intangible property interest." *Id.* (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)).  Plaintiff claims that his lawsuit is "painful and Kafkaesque" and that he has endured nightmares over the past three decades.  (Compl., ¶ 3, ECF No. 1.)  Nevertheless, Plaintiff fails to plead any injury to business or property, or concrete financial loss that were proximately caused by the Comcast Defendants' alleged conspiracy. *See Maio*, 221 F.3d at 483.

When the Court grants a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), it must also decide whether to grant the plaintiff leave to file an amended complaint.  The Court must decide whether it will provide the plaintiff with an opportunity to cure defects in the pleadings. Given the previous pattern of litigation filed by Plaintiff and his inability to even plausibly state a claim across his different legal theories (outside of fantastical and conclusory assertions), this Court will not grant leave to amend in this instance. A brief search on PACER reveals that Plaintiff has filed numerous *pro se* cases in the federal court system.[1]  Further, Plaintiff is currently enjoined from filing documents in the District of

---

[1] The Court in *Lu v. Clarke*, No. 20-cv-12010-IT, 2021 U.S. Dist. LEXIS 37151, **1-2 (D. Mass. Feb. 26, 2021), made reference to some of federal litigation previously filed by Plaintiff. *Id.* at 1-2, citing *Lu v. Capitol Waste Servs.*, No. 19-11458-FDS, 2019 U.S. Dist. LEXIS 230917, *2 n.1 (D. Mass. Sept. 19, 2019) (identifying Plaintiff's Massachusetts federal court cases by docket number as follows: 95-cv-12041-GAO; 96-cv-11253-REK; 96-cv-12257-RGS; 96-CV-12546-PBS; 97-cv-12021-DPW; 97-cv-12129-MLW; 97-cv-12323-GAO; 98-cv-10494; 99-cv-12448-REK; 00-cv-12465-RWZ; 00-cv-11492-MLW; 00-cv-10614-EFH; 01-cv-11384-MLW; 01-cv-10078-RWZ; 02-cv-11860-RCL; 12-cv-10326-WGY; 12-cv-11117-MLW; 14-cv-13053-LTS; 15-cv-10088-ABD; 15-cv-10615-PBS; 15-cv-10920-LTS; 15-cv-13344-PBS; 15-cv-11558-GAO; 15-cv-13349-GAO; 15-cv-13576-IT; 15-cv-14081-DJC; 17-cv-10518-PBS).

Massachusetts without first certifying that his claims are made in good faith due to the sheer number of frivolous lawsuits he has filed in that jurisdiction. *Lu v. Harvard Univ.*, No. 1:00-cv-11492, ECF 49, 2002 U.S. Dist. LEXIS 30683 (D. Mass. Mar. 20, 2002).

### B.  Dismissal of the Federal Defendants

As previously noted, Plaintiff has asserted a claim against the United States under the Federal Tort Claims Act; however, this Court lacks the requisite subject-matter jurisdiction to hear this claim.  An FTCA action may not be instituted unless the claimant first presents a written "claim for money damages in a sum certain for injury . . . alleged to have occurred by reason of the incident[.]" 28 C.F.R. § 14.2; see also 28 U.S.C. §§ 2675(a), (b) (requiring claim presentment). This "sum certain" requirement is among the terms defining the United States' consent to be sued and is, therefore, jurisdictional. See, e.g., *Juste v. U.S. Postal Serv.*, No. 22-cv-3683, 2023 WL 2599229, at *4 (E.D. Pa. Mar. 22, 2023), citing *White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 457-58 (3d Cir. 2010). The purpose of the requirement is to advance the orderly administration of claims by enabling the federal agency head to determine whether the claim can be legally settled and, if so, from where the payment can come from. *White-Squire*, 592 F.3d at 459; accord *Seldon v. Gibbs*, No. 11-cv-6392, 2012 WL 177417, at *2 (E.D. Pa. Jan. 23, 2012).  Here, Plaintiff seeks $1 billion in damages that he concedes is not based solely on the August 2022 alleged hacking incident but, rather, is tied to experiences that he has had over the past thirty years. (Compl., Ex., p. 5 (SF-95 Claim Form, Box 12a), ECF No. 1-1); (Compl., Ex., p. 4, ECF No. 1-1) (explaining that the $1 billion sum extends to "my trials and tribulations for thirty years").  The U.S. Department of Justice correctly denied the administrative claim because it "lacks a sum certain, thus rendering it invalid." (*See* Compl., Ex. B, DOJ letter, p. 7, ECF No. 1-1); *see generally Hoffenberg v. United States*, No. 10-cv-2788, 2012 WL 3079117, at *5 (D.N.J. July 27, 2012)

(blanket claim for $20 billion was jurisdictionally deficient under the FTCA because it stemmed not only from plaintiff inmate's FTCA medical malpractice claim but also from his restitution, financial crime, and access to courts claims). Therefore, Plaintiff's FTCA claim against the United States is also dismissed under Rule 12(b)(1) as jurisdictionally barred.

Plaintiff's constitutional tort damages claims against the Federal Defendants in their official capacity is deemed a suit against the United States. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 165-66 (1985) (a suit against officer in his or her official capacity is a suit against the government); *Christy v. Pennsylvania Turnpike Comm'n*, 54 F.3d 1140, 1143 n.3 (3d Cir. 1995) (same); *Hahn v. Smith*, No. 21cv-637, 2021 WL 1293442, at *2 (E.D. Pa. Apr. 7, 2021) (same). These claims must be based upon an explicit Congressional waiver of sovereign immunity. *See, e.g.*, *United States v. Testan*, 424 U.S. 392, 399 (1976) ("[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain suit"); *Jaffee v. United States*, 592 F.2d 712, 717-18 (3d Cir. 1979). The United States' "immunity [from suit] is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the U.S. Supreme Court held that a plaintiff may, under certain circumstances, directly assert an "individual capacity" suit against responsible federal agents under the United States Constitution. 403 U.S. 388 (1971). However, the U.S. Supreme Court also stressed that such an implied remedy does not lie against the United States or against federal agencies, which remain shielded by sovereign immunity. *Meyer*, 510 U.S. at 486. Sovereign immunity likewise bars *Bivens* suits against federal officials acting in their official capacities. *See, e.g.*, *Martinez v. United States*, No. 5:20-cv-1891, 2020 WL 1910256, at *6 (E.D. Pa. Apr. 20, 2020) (dismissing official-capacity claims against federal judges, on sovereign immunity grounds, as legally frivolous); *Schweitzer v. United States*, No. 2:CV-08-1806, 2011 WL

11

4435850, at *5 (E.D. Pa. Sept. 21, 2011) (on sovereign immunity grounds, granting motion to dismiss with prejudice official-capacity constitutional tort claims against judges). Therefore, Plaintiff's official-capacity constitutional tort claims against the Federal Defendants are precluded because there is sovereign immunity and no jurisdiction in any federal or state court. Under Federal Rule of Civil Procedure 12(b)(1), this Court must therefore dismiss any constitutional tort claims by Plaintiff against the United States and against the Federal Defendants in their official capacities.

Plaintiff's claims under a common law tort theory against the Federal Defendants are also deficient for lack of subject-matter jurisdiction.  In 1988, Congress passed the Federal Employees Liability Reform and Tort Compensation Act, commonly known as the "Westfall Act," which (1) provides that the FTCA (28 U.S.C. §§ 2671, *et seq*.) is the exclusive remedy for most tortious acts committed and omissions made by federal employees within the scope of their employment; and (2) precludes most other civil actions that arise out of such acts and/or omissions. 28 U.S.C. § 2679(b)(1).  Under the FTCA, the United States is the proper defendant, not its agencies or its employees.  28 U.S.C. § 2679(a), (b), (d); *Leitch v. MVM, Inc.*, No. 03-4344, 2004 WL 1638132, at *12 (E.D. Pa. July 22, 2004). Therefore, under Rule 12(b)(1) for lack of jurisdiction, the Court dismisses all common law tort claims against the Federal Defendants with prejudice because they are not proper defendants.

To state a civil RICO Act claim, a plaintiff must plausibly allege: (1) conduct within a four-year limitations period; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Caterbone v. PNC Bank*, No. 22-cv-1574, at *4 (E.D. Pa. July 12, 2022), citing *In re: Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010), 18 U.S.C. § 1962(c). To have standing to litigate such a claim, a plaintiff must also show injury to his business or property that the defendant's racketeering activities proximately caused. *Caterbone*, 2022 WL 2703613, at *4

(citing *Miller v. Pocono Ranch Lands Prop. Owners Ass'n Inc.*, 557 Fed. Appx. 141, 145 (3d Cir. 2014)); *see also Talley v. Mazzocca*, No. 19-2309, 796 Fed. Appx. 61, 63 (3d Cir. 2019) (stating that the injury must be a "concrete financial loss"); *see generally Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987) (holding that four-year statute of limitations applies).

An in-depth analysis of Plaintiff's RICO claims illuminates the implausibility of his claims as currently pleaded or potentially amended. Indeed, Plaintiff's allegations fail to mention a single detail regarding "the period of conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989). Plaintiff makes no plausible allegation or suggestion of conduct, enterprise, pattern, racketeering activity, or the injury elements that could meet the particularity standard of Federal Rule of Civil Procedure 9(b) ("[i]n alleging fraud . . . a party must state *with particularity* the circumstances constituting [said] fraud.") (emphasis added). As previously noted, Plaintiff claims that his lawsuit is "painful and Kafkaesque" and that he has endured nightmares over the past three decades.  (Compl., ¶ 3, ECF No. 1.)  Nevertheless, Plaintiff fails to plead any injury to business or property, or concrete financial loss that were proximately caused by the Federal Defendants' alleged conspiracy.  *See Maio*, 221 F.3d at 483. Thus, dismissal with prejudice is appropriate and warranted here—as amendment would be futile given Plaintiff's inability to show the requisite standing (in the form of injury to business or property or concrete financial loss) and his failure to plead *any* plausible facts to support his RICO claim.

## C.  Dismissal of the BPHC Defendants

As previously noted, Plaintiff's claims against the BPHC Defendants consist of the BPHC Defendants allegedly conspiring with judges, removing beds from their homeless shelter, and implementing a mask mandate.  However, before this Court can even engage with the merits of

these claims, the BPHC Defendants have correctly identified a number of defects—most notably with respect to personal jurisdiction.  Guidance on this issue can be found in *McMullen v. European Adoption Consultants, Inc.,* where the United States District Court for the Western District of Pennsylvania opined that:

> Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.
>
> Personal jurisdiction may be general or specific. General personal jurisdiction arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction require a showing of continuous and systematic contacts between the defendant and the forum state. Where, as here, plaintiff's claim is related to or arises out of the defendant's contacts with the forum, specific personal jurisdiction comports with due process provided that the minimum contacts standard is met. It has long been recognized that minimum contacts to support specific jurisdiction exist only where the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

109 F. Supp. 2d 417, 418–19 (W.D. Pa. 2000) (internal citations omitted).

Here, the BPHC Defendants—a Boston-based homeless shelter—do not have sufficient minimum contacts in this forum.  In fact, "none of the BPHC Defendants live in Pennsylvania, work in Pennsylvania, own land in Pennsylvania, hold a license in Pennsylvania, do business in Pennsylvania in any way, or have any other such longstanding connection with Pennsylvania." (Defs. BPHC Mot. to Dismiss, p. 9, ECF No. 44 & Ex. D, pp. 36-40, ECF No. 44-1.)  Additionally, all of Plaintiff's claims against the BPHC Defendants involve conspiring with federal judges in Massachusetts or involve actions taken by the BPHC Defendants in connection with allegedly removing beds in the shelter (ultimately denying Plaintiff his preferred accommodations) and implementing a mask mandate at the shelter in Boston, Massachusetts. Taken together, this Court cannot uncover what general or specific jurisdiction it has over the BPHC Defendants—meaning

that the BPHC Defendants are dismissed from this case with prejudice. *See Grezak v. Ropes & Gray, LLP*, 809 F. App'x 60, 63 n.9 (3d Cir. 2020) ("[W]e read the District Court's 'with prejudice' dismissal of the claims against the defendants over which it lacked personal jurisdiction as meaning that the dismissal is 'with prejudice' to [the plaintiff's] ability to refile those claims in a court sitting in Pennsylvania.").

Additionally, because Plaintiff fails to state a cognizable claim against the BPHC Defendants, this Court could even bypass the issue of personal jurisdiction by simply resolving the issue on the merits. *See*, *e.g.*, 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1067.6 (4th ed. 2020) ("Alternatively, when the jurisdictional question is complex or difficult, a court simply may avoid the issue by resolving the suit on the merits when they clearly must be decided in favor of the party challenging jurisdiction, thereby obviating any need to decide the question; that approach is possible even when the jurisdictional issue lacks complexity."); *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 329 (W.D. Pa. 2010) ("To streamline the decision making, courts, in situations where complex issues of personal jurisdiction exist and there is a pending motion which would be dispositive in favor of the party over whom jurisdiction is disputed, may…proceed to resolve the dispositive motion."); *see also Herrick v. Grindr LLC*, 765 F. App'x 586, 593 n.2 (2d Cir. 2019) ("Because the complaint must be dismissed in its entirety on the grounds of CDA immunity and failure to state claims, we need not address [the defendants'] personal jurisdiction arguments.").

In looking at Plaintiff's three major claims, it is evident that Plaintiff has not alleged facts that would allow this Court to infer that the BPHC Defendants are liable for the misconduct alleged. First, Plaintiff makes a conclusory allegation that the BPHC Defendants "collude[d] with [the] district judge assigned unlawfully to the case," (Compl., ¶ 10, ECF No. 1), without providing

a single detail regarding "the period of conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin*, 885 F.2d at 1166 (3d Cir. 1989).  Second, Plaintiff makes another conclusory allegation around a "mask mandate" without providing any clarity on how such an action violates the Fourteenth Amendment's Due Process Clause. (Compl., ¶ 16(d), ECF No. 1.)  Finally, the crux of Plaintiff's claim against the BPHC Defendants appears to center on the removal of beds—which denied Plaintiff his preferred accommodation. However, though in the context of the landlord-tenant relationship and not a homeless shelter, the U.S. Supreme Court clarified that the United States Constitution "does not provide judicial remedies for every social and economic ill. We are unable to perceive in that document any constitutional guarantee of access to dwellings of a particular quality…..") *Lindsey v. Normet*, 405 U.S. 56, 74 (1972).

Taken together, though dismissal with prejudice for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is sufficient on its own, this Court also finds that Plaintiff has failed to plausibly state or flesh out claims upon which any semblance of relief could be granted by this Court pursuant to Federal Rule of Civil Procedure 12(b)(6).

**D.  Dismissal of the Remaining Defendants**

Finally, with respect to the Remaining Defendants—Walter T. Mitchell and Jahad Hasan (Boston Police Department Detectives), Eric T. Donovan (Clerk Magistrate), Judge David T. Donnelly (Boston Municipal Court), Steven Tankle (Boston City Official), and Jeffrey A. Locke (Chief Justice of the Trial Court)—there is no sufficient evidence proffered by Plaintiff that these individuals have been properly served.  For example, Plaintiff notes:

> On Mar 31, 2023 (as soon as I got my hands on the summons), I emailed a copy of summons (for the three above named defendants each [Eric T. Donovan, David T. Donnelly, and Jeffrey A. Locke]) and complaint to AGO [the Attorney General's

Office]. For as long as anyone can recall, Massachusetts state employees have entrusted AGO to receive and accept service of process on their behalf, and that office (AGO) has waived service of process and preferred receipt of process by email ever since the pandemic of Covid-19 started in March 2020.

(Pl. Request to Clerk for Entry of Default, p. 1, ECF No. 14.)  However, Footnote 1 of the Supreme Judicial Court of Massachusetts's Order permitting email service of various pleadings and documents explicitly excludes service of a summons and complaint under Massachusetts Rule of Civil Procedure 4 (noting that Rule 4 is not covered or affected by the court's order).[2]

Further, with respect to Walter T. Mitchell and Jahad Hasan (Boston Police Department Detectives) and Steven Tankle (Boston City Official), Plaintiff asserts that he sent process to these Defendants via certified mail and seemingly did so in compliance with Pennsylvania statute. (Pl. Request to Clerk for Entry of Default Against Mitchell, Hasan & Tankle, ECF No. 60.)  Of import here, Federal Rule of Civil Procedure 4(e)(1) notes, in relevant part, that "an individual…may be served in a judicial district of the United States by: **(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located [*i.e.,* Pennsylvania]…." Fed. R. Civ. P. 4(e)(1). Pennsylvania permits service of process via mail on out-of-state defendants—like Mitchell, Hasan, and Tankle—in the following manner:

> Rule 404 provides in pertinent part: "Original process shall be served outside the Commonwealth within ninety days of the issuance of the writ or the filing of the complaint or the reissuance or the reinstatement thereof. . .(2) by mail in the manner provided by Rule 403." Pa.R.C.P. 404. Rule 405(c) provides that service of process by mail under Rule 403 "***shall include a signed return receipt signed by the defendant.***" Pa.R.C.P. 405. Rule 403 directs that "a copy of the process shall be mailed to the defendant ***by any form of mail requiring a receipt signed by the defendant or his authorized agent***. Service is complete upon delivery of the mail." Pa.R.C.P. 403.

---

[2] Massachusetts Supreme Judicial Court, *Supreme Judicial Court Order concerning email service in cases under Rule 5(b) of Mass. Rules of Civil Procedure*, n.1, Mar. 30. 2020, https://www.mass.gov/supreme-judicial-court-rules/supreme-judicial-court-order-concerning-email-service-in-cases-under-rule-5b-of-mass-rules-of-civil-procedure (last visited Aug. 9, 2023).

*Sawyers v. Davis*, 2019 PA Super 319, 222 A.3d 1, 5–6 (2019) (emphasis added).

Here, Plaintiff has offered no evidence of a receipt signed by these three Defendants. Instead, Tankle's green slip reveals that no signature was contemplated or required, and Mitchell and Hasan's joint green slip was lost in an alleged robbery. (Pl. Request to Clerk for Entry of Default Against Mitchell, Hasan & Tankle, pp. 1, 3, ECF No. 60.) Thus, Plaintiff has not met his burden of demonstrating that service of process was properly or timely effectuated. *See Sims v. City of Philadelphia*, 552 F. App'x 175, 177 (3d Cir. 2014) ("The party asserting the validity of service bears the burden of proof on that issue.") (quoting *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)). Therefore, this Court opts to dismiss the Remaining Defendants without prejudice for lack of proper or timely service, pursuant to Federal Rule of Civil Procedure 4(m).[3]

## V.   CONCLUSION

For the foregoing reasons, the Comcast Defendants, Federal Defendants, and BPHC Defendants' motions to dismiss are hereby granted. Plaintiff Friedrich Lu will not be granted leave to amend his claims as to the Comcast Defendants, Federal Defendants, and BPHC Defendants because any attempt to amend would be futile—namely for the reasons outlined above regarding Plaintiff's past frivolous filings regarding comparable claims of a conspiracy, this Court's lack of subject-matter jurisdiction, sovereign immunity, and Plaintiff's failure to even remotely state a

---

[3] Federal Rule of Civil Procedure 4(m) notes, in relevant part: "If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). In understanding what constitutes "good cause," the Eastern District of Pennsylvania has reiterated that "a misunderstanding of the law does not provide good cause for its nonadherence." *Duc Long v. MTD Prod. Inc.*, No. 16-CV-4272, 2016 WL 9774503, at *3 (E.D. Pa. Dec. 29, 2016). Thus, this Court dismisses the Remaining Defendants without prejudice for lack of proper or timely service.

claim or cognizable cause of action against any Defendant. *See City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile). Additionally, the Remaining Defendants are hereby dismissed without prejudice for lack of proper or timely service.

An appropriate Order follows.

**IT IS SO ORDERED.**

**BY THE COURT:**

_____*/s/ John Milton Younge*_____
**JUDGE JOHN MILTON YOUNGE**